812 F.2d 1400
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
The DOW CHEMICAL COMPANY, Plaintiff-Appellee,
v.
MARL CONCRETE SPECIALTIES, INC. a West Virginia Corporation;
Dean E. Lewis; Defendant-Appellant,
George T. Martin, Individually, Defendant.
 No. 86-3063.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 9, 1986.
Decided Feb. 25, 1987.
 
 Before RUSSELL, WIDENER and WILKINSON, Circuit Judges.
 Joshua Israel Barrett (Rudolph L. di Trapano; Di Trapano & Jackson, on brief), for appellants.
 John Howard Fleming (Sutherland, Asbill & Brennan; Charles L. Woody; Spilman, Thomas, Battle & Klostermeyer; Jane M. Gootee, The Dow Chemical Company, on brief), for appellee.
 PER CURIAM:
 
 
 1
 Marl Concrete Specialties, Inc. and Dean Lewis appeal a judgment awarding Dow Chemical Company royalties in the amount of $187,421.21, plus pre-judgment interest, due under a licensing agreement between Marl and Dow. The district court denied Marl's post-trial motions and upheld the jury verdict. We affirm.
 
 
 2
 Dow purchased a patent for latex modified concrete (LMC) in 1973 from Dupont Chemical Company which originally obtained it in 1962. LMC is a type of concrete able to withstand the de-icing chemicals used on highways and bridges. In 1974, Dow and Marl entered into a licensing agreement under which Dow granted Marl a non-exclusive license to purchase Modifier A, a Dow product used to compound LMC. Under the agreement, Dow was to provide technical assistance and training in the use of LMC, and promotional assistance to induce state highway departments to include LMC in their bids. Marl agreed to pay Dow $10,000 plus a royalty of $35.00 per cubic yard of latex modified concrete poured by Marl. Dean Lewis, a Marl shareholder, acted as guarantor on Marl's behalf.
 
 
 3
 Two years later, Marl became aware of competition by non-licensed users of latex modified concrete. In June of 1977, Marl demanded that Dow enforce its patent rights. Unsatisfied with Dow's response, Marl refused to pay any further royalties. A few weeks later, Dow issued "paid up" licenses which allowed its existing licensees to suspend royalty payments accrued after August, 1977. Dow refused, however, to waive any royalties accruing before August, 1977.
 
 
 4
 In February of 1978, Dow sued Marl in federal district court in Kentucky to recover the royalties due under the agreement. It also sought judgment against Lewis as guarantor. Marl counterclaimed, alleging that Dow fraudulently induced Marl to enter into the licensing agreement by misrepresenting that it would or could enforce its patent against non-licensed competitors. The matter was later transferred to the Southern District of West Virginia. At trial, the jury returned a verdict for Dow.
 
 
 5
 Marl contends on appeal that it is entitled to a new trial on the ground that Dow procured the licensing agreement on an invalid patent. According to Marl, Dow had "prior art," that is, it had already developed Modifier A before Dupont obtained its patent in 1962. Therefore, Marl contends, Dupont's original patent was invalid and remained invalid when it was purchased by Dow.
 
 
 6
 The case, however, was not tried on this theory, and Marl failed to request an appropriate instruction. As the trial court noted, there was "no evidence one way or the other" on the validity or invalidity of the patent, and we decline to consider that issue here.
 
 
 7
 Marl further contends that the district court's jury instruction on the waiver of its fraud defense was not supported by the evidence. The jury was instructed that
 
 
 8
 [I]f you further find by a preponderance of the evidence that Marl fully discovered that the misrepresentations made by Dow were fraudulent ones and then acted in such a manner as to manifest Marl's intention to abide by the License Agreement in spite of Marl's knowledge of Dow's fraud, then Marl thereby waived Dow's fraudulent misrepresentation and cannot assert such fraudulent misrepresentation as a defense to Dow's claim in this action....
 
 
 9
 The record shows that this instruction was amply supported by the evidence. Dow presented evidence that Marl continued to profit from the licensing agreement even after it became aware of non-licensed competition in the field. Dow showed that Marl, despite its knowledge that competition existed, submitted completion notices to Dow acknowledging that royalties were due on all of Marl's LMC work using Modifier A in 1976. The evidence also revealed that Marl sought to enter into new licensing agreements with Dow. These facts support the district court's jury instruction regarding waiver.
 
 
 10
 Appellant Lewis contends that the district court erroneously excluded his testimony regarding statements made by Dow officials that the guaranty he signed on Marl's behalf did not apply to royalties accrued under the licensing agreement. Apparently, Lewis is referring to the district court's exclusion of an unauthenticated handwritten note in which Dow official Dennis Harrison told Lewis that "the following has nothing to do with royalties." Lewis contended below that a form guaranty was originally attached to the note. The form guaranty, however, was not produced at trial, and Lewis' counsel stated that it could not be found. In addition, appellant Lewis failed under F.R.E. 103(a)(2) to make an offer of proof regarding any statements that Dow made to him with respect to the scope of the guaranty agreement. We decline, therefore, to hold that the district court erred in excluding the note.
 
 
 11
 Appellants' final contention is that the district court erred in applying Michigan law to calculate the prejudgment interest award. They argue that West Virginia law should apply because the contract was negotiated in that state. We disagree. This matter was initially filed in federal district court in Kentucky, and, therefore, Kentucky choice of law principles apply. As the district court noted, Kentucky law generally follows the Restatement (Second) of Conflict of Laws. The Restatement view is that the law of the state chosen by the parties to govern their rights and duties under the contract applies to awards of pre-judgment interest. Restatement (Second) of Conflicts of Laws Sec. 187(1), 207 (1971); see also Stauffer Chemical Co. v. Keysor-Century Corp., 541 F.Supp. 239 (D.Del.1982). In this case, the parties specified that Michigan law would govern the agreement. The district court did not err in applying Michigan law in determining the pre-judgment interest award or in holding that the law governing the primary obligation likewise governed the guaranty.
 
 
 12
 Our review of the record convinces us that this case was well tried and that substantial evidence supported the jury's verdict. The judgment of the district court is affirmed in all respects.
 
 
 13
 AFFIRMED.